**BRYAN CAVE LLP**
Julie E. Patterson, California Bar No. 167326
Julie W. O'Dell, California Bar No. 291083
3161 Michelson Drive, Suite 1500
Irvine, CA  92612-4414
Telephone:(949) 223-7000
Facsimile: (949) 223-7100
E-Mail:    jepatterson@bryancave.com
           julie.odell@bryancave.com

Attorneys for Defendant
ADECCO USA, INC.

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CA  92612-4414

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAJAN NANAVATI, on behalf of himself and all others similarly situated, and on behalf of the general public,<br><br>Plaintiff,<br><br>vs.<br><br>ADECCO USA, INC., and DOES 1 through 50, inclusive;<br><br>Defendants. | Case No.:  5:14-CV-04145-BLF<br><br>(Santa Clara Court No. 1-14-CV-269398)<br><br>CLASS ACTION<br><br>Hon. Beth Labson Freeman / Room 3<br><br>**DECLARATION OF VIRGINIA WATSON IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>Date:          March 26, 2015<br>Time:          9:00 a.m.<br>Courtroom:    3<br><br>Complaint Filed:      August 15, 2014<br>Complex:             August 22, 2014<br>Trial Date: |

5:14-CV-04145-BLF

DECLARATION OF VIRGINIA WATSON

**DECLARATION OF VIRGINIA WATSON**

I, VIRGINIA WATSON, declare as follows:

1.      I am the Senior Vice President of Operations for defendant Adecco USA, Inc. ("Adecco").  Adecco is one of the largest staffing companies in the United States that provides a full range of recruitment and staffing solutions to meet the evolving workforce needs of Adecco's clients and the temporary employees ("associates") who are placed for employment at client sites. Adecco maintains its corporate headquarters in Jacksonville, Florida, but has branches and offices in 47 states, including California.  I have been involved in the staffing industry for more than 25 years.  I have worked for Adecco or its predecessor entities since November of 1988.  In 2007,  I became the Senior Vice President of Operations and Affiliated Services.  I have held my current position since 2010.  As Senior Vice President of Operations, I am responsible for the overall processes and implementation of policies involving the placement of associates at Adecco clients nationwide.  The facts contained herein are true based on my personal knowledge, and if called upon as a witness in this case, I could and would testify competently to the truth thereof.

2.      Adecco maintains a proprietary database known as Custom Match ("CM") that houses the personnel information of Adecco associates.  I have reviewed Plaintiff Rajan Nanavati's CM file.  In addition, I have reviewed all on-boarding documents executed and processed by Plaintiff in US Verfiy, the web based application utilized by Adecco for all associates at the time of their hire.  Plaintiff is an associate who was placed by Adecco in the temporary position of GSX Dispatcher at Google, an Adecco client.  Plaintiff applied for this position through a job posting placed by Adecco on its website, AdeccoUSA.com.  Plaintiff commenced his assignment on January 27, 2014 and his assignment ended payroll period ending May 18, 2014.

3.      Generally, applicants who seek placement through Adecco, must first register on AdeccoUSA.com, create a username and password, and complete an application for consideration for the position.  If the applicant meets certain minimum requirements for the position, an Adecco recruiter typically interviews the applicant by phone and sends a link via an e-mail for the applicant to complete any testing or assessments needed for the position.  If an applicant is

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CA  92612-4414

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CA 92612-4414

ultimately selected for the position, the recruiter will notify the applicant that he/she must complete new hire documents through a web based application known as US Verify.

4.       Adecco has utilized US Verify as its employee on-boarding tool for individuals seeking to be placed for temporary positions at Adecco clients since June 2010.  US Verify is a web-based tool that delivers new-hire on-boarding forms electronically to individuals selected for assignment.  In addition to the I-9 form, US Verify allows employees to view and complete the Federal W-4 form, applicable State Tax forms, Adecco personnel forms such as, the  payroll choice form, mandatory contact notice form, background authorization and release, reference check release, notice of health care benefit options,  a copy of the employee handbook,  as well as any state specific necessary forms regarding disability, family and pregnancy leave.  US Verify also allows Adecco to bundle any client specific forms that may be applicable for the position for which the associate has been selected.  In short, US Verify serves as a single repository for associates to complete necessary new hire and on-boarding documents specific to an assignment for which an associate has been placed by Adecco.

5.       US Verify has the functionality to securely deliver the on-boarding forms remotely wherever the employee is able to access a computer.  The process commences by the Adecco recruiter sending an e-mail to the associate with the web-secure link that is specific to that associate based on the position for which the associate has been selected and the associate's e-mail address that was provided by the associate to Adecco at the time the associate registered on AdeccoUSA.com.  Based on information available to me on US Verify, plaintiff was sent an e-mail by an Adecco representative  on January 20, 2014 at 6:20 (CST) so that Plaintiff could access US Verify and complete his on-boarding documents.  A copy of the notice delivered to Plaintiff is attached herein as Exhibit A.  Plaintiff completed the I-9 form on January 21, 2014 at 12:51 pm (CST) and completed the remaining forms that day at 2:02 pm (CST).

6.       In order to access the on-boarding documents in US Verify, the associate must do the following::
a.   Click on the link provided to the associate in the e-mail
b.   Enter his or her registered e-mail address

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CA  92612-4414

   c.  Enter personal information such as name, social security number, date of birth and zip code in mandatory fields denoted with an asterisk

7.  Upon accessing US Verify, the associate is shown the list of documents that the associate must complete in sequential order.   The very first document that the associate can access is the "Electronic Signature Agreement."  Before the associate can proceed in accessing any other document the associate must acknowledge and agree to the Electronic Signature Agreement.  The Electronic Signature Agreement specifically states the following:

By providing your electronic signature below, you:

-  Agree that your electronic signature holds the same value as your signature,
-  Agree that you have fully read and understand all information preceding your electronic signature in each location where our electronic signature appears.

By clicking the "Electronically Sign This Form" button below I certify that the above information is true and correct, and I agree to the conditions of hiring.

The associate is then directed to click on the a green highlighted button stating "Electronically Sign This Form."  A copy of the Electronic Signature Agreement signed electronically by Plaintiff is attached herein as Exhibit B.

8.  Upon acknowledging agreement to the Electronic Signature Agreement, the associate is next directed to the Dispute Resolution and Arbitration Agreement form ("Dispute Resolution Agreement").  The associate is given the ability to download or print the AAA Rules before proceeding to the Dispute Resolution Agreement form.

9.  Paragraph 1 of the Dispute Resolution Agreement states that "the Company and Employee agree that any and all disputes, claims, or controversies arising out of or relating to this Agreement, the employment relationship between the parties, or the termination of the employment relationship shall be resolved by binding arbitration in accordance with the Employment Arbitration Rules of the American Arbitration Association then in effect."  Paragraph 1 of the Dispute Resolution Agreement also states in bold capitalized letters that "**BY SIGNING THIS AGREEMENT, THE PARTIES HEREBY WAIVE THEIR RIGHT TO HAVE ANY DISPUTE, CLAIM OR CONTROVERSY DECIDED BY A JUDGE OR JURY IN A COURT."**

10. Associates must electronically sign the Dispute Resolution Agreement by clicking on a green button indicating "Electronically Sign This Form" before the associate can proceed with the next document in US Verify. Upon clicking on the green button, a pop-up window appears that states, "Under penalties of perjury, I declare that I have examined this form and to the best of my knowledge and belief, its true, correct, and complete." The associate is given the option of clicking on "Yes" or "No" in response to the above statement. In order to proceed with the process, the associate must click on "Yes." Plaintiff Nanavati electronically signed the Dispute Resolution Agreement and had to click on "Yes" in confirming his electronic signature before proceeding with the next on boarding document. A copy of Plaintiff's signed Dispute Resolution Agreement is attached herein as Exhibit C.

11. Paragraph 9 of the Dispute Resolution Agreement allows an associate to opt out of the Dispute Resolution Agreement by requesting an Opt Out form via a specific link to an e-mail address provided for within Paragraph 9 of the Dispute Resolution Agreement. If the associate desires to opt out, the associate must click on the e-mail link and request a copy of an Opt Out form from Adecco's Human Resources Department. The HR Department then delivers the Opt Out form to the associate via e-mail and the associate must then submit the signed Opt Out form within thirty days of signing the Dispute Resolution Agreement. The Opt Out form is then uploaded into US Verify and made a part of the associate's US Verify records. Paragraph 9 of the Dispute Resolution Agreement provides that the associate and Adecco have mutually accepted the terms of the Dispute Resolution Agreement if the associate does not opt out in a timely manner.

12. Based on my review of Plaintiff's US Verify records and confirmation with the designated custodian of Opt Out forms with Adecco's HR Department, Adecco did not receive any e-mail or any request by Plaintiff asking for the Opt Out form. Adecco has no record of a signed and executed Opt Out form from Plaintiff and none exists in his US Verify file.

13. The very last form that an associate must complete as part of the on-boarding process in US Verify is the "Acknowledgment of Company Form." This form lists all documents that were part of the package on US Verify and requires the associate to acknowledge receipt of and having agreed to read and accept the terms of the on-boarding forms. The associate must click

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CA  92612-4414

on a green "Electronically Sign This Form" button before the on-boarding process can be completed. Upon clicking on such button, a pop-up window again appears stating that "Under penalties of perjury, I declare that I have examined this form and to the best of my knowledge and belief, its true, correct, and complete." The associate is given the option of clicking on "Yes" or "No" in response to the above statement.  In order to proceed with the process, the associate must click on "Yes." A copy of Plaintiff's signed Acknowledgement Form is attached herein as Exhibit D.

14.     Upon completing the on-boarding process, the associate is given the opportunity to save or print each and every document contained in the process.

15.     Adecco has a substantial interest in the accuracy of these records, as they are its primary means of verifying that a newly-engaged associate (i) has received the information presented in the onboarding process, (such as the company's workplace violence policy and policy against harassment), (ii) has provided certain information required for human resources and payroll purposes (such as a. taxpayer identification number and emergency contact information), and (iii) has agreed to abide by various company rules.

Executed this 21st day of November, 2014, at Atlanta, Georgia.

*/s/ Virginia Watson*_____

**VIRGINIA WATSON**

SIGNATURE CERTIFICATION

I hereby attest that I have on file all holograph signatures for any signatures indicated by a "conformed" signature (/S/) within this e-filed document.

*/s/ Julie E. Patterson*_____
Julie E. Patterson
BRYAN CAVE LLP
Attorneys for Defendant ADECCO USA, INC.

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CA  92612-4414

# EXHIBIT A

| | |
|---|---|
| **From:** | bennett.fong@adeccona.com via USVerify <do_not_reply@usverify.com> |
| **Sent:** | Friday, November 21, 2014 10:03 AM |
| **To:** | Prentiss, Rachel |
| **Subject:** | ADECCO ONBOARDING FORMS - PLEASE COMPLETE~ |

DEAR RAJAN NANAVATI,

**Congratulations, you meet Adecco's preliminary hiring criteria and I look forward to assisting you through the on-line forms process. Please pay close attention to the details below:**

**1) Workplace Harassment Video** : View the Workplace Harassment Video by clicking on this link: Workplace Harassment Video.

You will be asked to acknowledge that you have watched our Workplace Harassment Video while completing the OnBoarding forms.

2) You may be asked for a Client/Employer ID: ADECCO

3) **Employee Handbook**: Will be delivered to you in your OnBoarding packet. You will have the opportunity to save and/or print the handbook for your reference.

4) Employment Forms: ----Be prepared to provide:

\***10 year history of addresses** where you have lived

\* **10 year history of employment** including start and end date(s). If you have not been employed for any period of time during the last 10 years, indicate Not Employed and these dates.

Note: Inaccurate dates can result in delays or ineligibility for certain assignments.

\***Direct Deposit** information including bank name and address, routing and account number.

My goal is to assist you through the hiring process as quickly and smoothly as possible. Please let me know if you have any questions while completing the online forms or reviewing the Workplace Harassment video.

**Note: Please save this email for future reference as you may need to refer back to it to log back in if you log out and/or time out while completing your forms.**

**For extra technical assistance, please click on this link**: Extra Technical Assistance

Click here to complete your forms
If the link doesn't work, copy and paste the following into your browser:
https://secure.usverify.com/hrmgr/eob?p_action=APPLICANTENTRY&p_keycode=8xDOkz1KfUP6%2BtwPi
8FIPAiT66ioFA%2Bz

For any questions please contact Bennett Fong at (650) 745-2015

Sincerely,
Bennett Fong
Inter-office AE

# EXHIBIT B

# E-Signature Agreement

US Verify is a web-based hiring process that greatly reduces paperwork. You will be asked to provide your signature electronically on the required forms.

By providing your electronic signature below, you:

- Agree that your electronic signature holds the same value as your signature.
- Agree that you have fully read and understand all information preceding your electronic signature in each location where your electronic signature appears.

**By clicking the "Electronically Sign This Form" button below I certify that the above information is true and correct, and I agree to the conditions of hiring.**

**Your Signature:** RAJAN NANAVATI e-Sign - I Agree **Date:** 1/21/2014

EXHIBIT C

11

**Dispute Resolution and Arbitration Agreement for Consultants/Associates**

This Dispute Resolution and Arbitration Agreement for Consultants/Associates ("Dispute Resolution Agreement") is entered between Adecco USA, Inc., its successors and assigns and its officers, directors, employees, affiliates, subsidiaries and parent companies (collectively referred to as the "Company"), and RAJAN NANAVATI_____ ("Employee").

**Recitals**

A.      The Company desires to consider Employee for placement or the continuation of Employee on temporary work assignments at Company's client(s) ("Client(s)");

B.      Employee is desirous of such consideration or continued assignment; and

C.      Employee and the Company desire to resolve any disputes concerning the terms, conditions or benefits of Employee's employment.

NOW THEREFORE, based on the above, and in consideration of the mutual covenants and conditions set forth herein, the parties hereto agree as follows:

1.      It is the Company's goal that workplace disputes or claims be handled responsibly and on a prompt basis. Employee and the Company are encouraged to take advantage of the procedures in the Company's Open Door Policy and solve problems and disputes informally, through dialog with Employee's supervisor, manager or Human Resources representative.  Absent resolution through such process, the Company and Employee agree that any and all disputes, claims or controversies arising out of or relating to this Agreement, the employment relationship between the parties, or the termination of the employment relationship, shall be resolved by binding arbitration in accordance with the Employment Arbitration Rules of the American Arbitration Association then in effect. These Rules can be obtained from the Company Human Resources Department or on line at www.adr.org. The agreement to arbitrate includes any claims that the Company may have against Employee, or that Employee may have against the Company or against any of its officers, directors, employees, agents, or parent, subsidiary, or affiliated entities, except as set forth below. The arbitration shall take place in the county where Employee is or was last employed by the Company.  The Company and Employee agree that the aggrieved party must give written notice of any claim to the other party no later than the expiration of the statute of limitations (deadline for filing) that the law sets forth for such claim.  This Agreement shall be enforceable under and subject to the Federal Arbitration Act, 9 U.S.C. Sec 1 *et seq.* and shall survive after the employment relationship terminates*.*  **BY SIGNING THIS AGREEMENT, THE PARTIES HEREBY WAIVE THEIR RIGHT TO HAVE ANY DISPUTE, CLAIM OR CONTROVERSY DECIDED BY A JUDGE OR JURY IN A COURT.**

2.      Except as it otherwise provides, this Dispute Resolution Agreement also applies, without limitation, to disputes regarding the employment relationship, trade secrets, unfair competition, compensation, breaks and rest periods, termination, or harassment and claims arising under the Uniform Trade Secrets Act, Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act, Genetic Information Non-Discrimination Act, and state statutes, if any, addressing the same or similar subject matters, and all other state statutory and common law claims.

3.      The arbitration requirement does not apply to (i) claims for workers compensation, state disability insurance and unemployment insurance benefits; (ii) claims for employee benefits under any benefit plan sponsored by the Company and covered by the Employee Retirement Income Security Act of 1974 or funded by insurance; however, this Dispute Resolution Agreement does apply to claims for breach of fiduciary duty, for penalties, or alleging any other violation of the Employment Retirement Income Security Act of 1974, as amended, even if such claim is combined with a claim for benefits; and (iii) disputes that may not be subject to predispute arbitration agreements as provided by the Dodd-Frank Wall Street Reform and Consumer Protection Act (Public Law 111-203).

4.      Regardless of any other terms of this Dispute Resolution Agreement, claims may be brought before an administrative agency if applicable law permits access to such an agency notwithstanding the existence of an agreement to arbitrate. Such administrative claims may include without limitation claims or charges brought before the Equal Employment Opportunity Commission (www.eeoc.gov), the U.S. Department of Labor (www.dol.gov), the National Labor Relations Board (www.nlrb.gov), or the Office of Federal Contract Compliance Programs (www.dol.gov/esa/ofccp). Nothing in this Dispute Resolution Agreement shall be deemed to preclude or excuse a party from bringing an administrative claim before any agency in order to fulfill the party's obligation to exhaust administrative remedies before making a claim in arbitration.

5.      Although Employee will not be retaliated against, disciplined or threatened with discipline as a result of his or her exercising his or her rights under Section 7 of the National Labor Relations Act by the filing of or participation in a class, collective or representative action in any forum, the Company may lawfully seek enforcement of this Dispute Resolution Agreement including the

12

AOP42012   Version 05/15/12

following class, collective and/or representative action waivers under the Federal Arbitration Act and seek dismissal of such class, collective or representative actions or claims.

6.      Employee or the Company may apply to a court of competent jurisdiction for temporary or preliminary injunctive relief in connection with an arbitrable controversy, but only upon the ground that the award to which that party may be entitled may be rendered ineffectual without such provisional relief.

7.      **BY SIGNING THIS AGREEMENT, THE PARTIES AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN THEIR INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS AND/OR COLLECTIVE PROCEEDING.**

8.      **FURTHERMORE, BY SIGNING THIS AGREEMENT, THE PARTIES AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN THEIR INDIVIDUAL CAPACITY AND NOT IN ANY REPRESENATATIVE PROCEEDING UNDER ANY PRIVATE ATTORNEY GENERAL STATUTE ("PAGA CLAIM"), UNLESS APPLICABLE LAW REQUIRES OTHERWISE.  IF THE PRECEDING SENTENCE IS DETERMINED TO BE UNENFORCEABLE, THEN THE PAGA CLAIM SHALL BE LITIGATED IN A CIVIL COURT OF COMPETENT JURISDICTION AND ALL REMAINING CLAIMS WILL PROCEED IN ARBITRATION.**

9.      Within 30 days after signing this Agreement, Employee may submit a form stating that Employee wishes to opt out and not be subject to the Dispute Resolution Agreement. Employee must submit a signed and dated statement on a "Dispute Resolution and Arbitration Agreement for Consultants/Associates Opt Out Form" ("Form") that can be obtained from the Company Human Resources Department Send your request for the Opt Out Form to: associatearbitration@adeccona.com .  An Employee who opts out as provided in this paragraph will not be subject to any adverse employment action as a consequence of that decision and may pursue available legal remedies without regard to the Dispute Resolution Agreement. Should Employee not opt out of the Dispute Resolution Agreement in a timely manner, Employee and the Company will be deemed to have mutually accepted the terms of the Dispute Resolution Agreement.

10.     It is understood and agreed by the parties that a Client and its affiliates are intended to be third party beneficiaries to this Dispute Resolution Agreement. Although the Client and its affiliates are not the Employee's employer, any disputes that may be asserted against Client or its affiliates due to Employee's temporary work assignment at Client shall be resolved pursuant to this Dispute Resolution Agreement in the same manner as claims made against the Company.

11.     An Employee has the right to consult with counsel of the Employee's choice concerning this Dispute Resolution Agreement. Employee has read this Dispute Resolution Agreement carefully, fully understands the meaning of its terms and is signing it knowingly and voluntarily.

12.     It is against Company policy for any Employee to be subject to retaliation if he or she exercises his or her right to assert claims under this Dispute Resolution Agreement. If any Employee believes that he or she has been retaliated against by anyone at the Company, the Employee should immediately report this to the Company Human Resources Department.

13.     The Company may change or modify the terms of the Dispute Resolution Agreement at any time with reasonable prior notice to Employee.  It is understood that future changes will supersede or eliminate, in whole or in part, the terms of the Dispute Resolution Agreement.  Current versions of the Dispute Resolution Agreement will be posted by the Company on the Company's internet site or such other location(s) designated by the Company.

14.     If any provision(s) of this Dispute Resolution Agreement is declared overbroad, invalid or unenforceable such provision(s) shall be severed from this Dispute Resolution Agreement and, the remaining provisions of this Dispute Resolution Agreement shall remain in full force and effect and shall be construed in a fashion which gives meaning to all of the other terms of this Dispute Resolution Agreement.

IN WITNESS WHEREOF, the parties have voluntarily and knowingly executed this Dispute Resolution Agreement on the day and year set forth below.

EMPLOYEE                                                ADECCO USA INC.

RAJAN NANAVATI e-Sign - I Agree          _____

DATE: 1/21/2014_____    DATE: 1/21/2014_____

13

EXHIBIT D

15

**Name:** RAJAN NANAVATI

EMPLOYMENT ARBITRATION RULES
EMPLOYEE HANDBOOK
CA - PREGNANCY DISABILITY LEAVE
CA - VOLUNTARY DISABILITY PLAN AMENDMENTS
CA - NOTICE TO EMPLOYEES IN VDI PLAN
CA - DISABILITY AND PAID FAMILY LEAVE PLAN
CA PAID FAMILY LEAVE
CODE OF BUSINESS CONDUCT
401(K) PLAN RECRUITMENT DOCUMENT
HEALTH INSURANCE MARKETPLACE COVERAGE OPTIONS


I acknowledge receipt of, and have agreed to read, and hereby accept, this:

EMPLOYMENT ARBITRATION RULES
EMPLOYEE HANDBOOK
CA - PREGNANCY DISABILITY LEAVE
CA - VOLUNTARY DISABILITY PLAN AMENDMENTS
CA - NOTICE TO EMPLOYEES IN VDI PLAN
CA - DISABILITY AND PAID FAMILY LEAVE PLAN
CA PAID FAMILY LEAVE
CODE OF BUSINESS CONDUCT
401(K) PLAN RECRUITMENT DOCUMENT


RAJAN NANAVATI  1/21/2014          RAJAN NANAVATI e-Sign - I Agree
_____          _____
Printed Name and Date                     Signature


08/15/11

15