# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

RAJAN NANAVATI, on behalf of himself and all others similarly situated, and on behalf of the general public

Plaintiff,

v.

ADECCO USA, INC.,

Defendant.

Case No.  14-cv-04145-BLF

**ORDER GRANTING MOTION TO COMPEL ARBITRATION; STAYING ACTION PENDING COMPLETION OF ARBITRATION**

[Re:  ECF 13]

This lawsuit concerns alleged violations of the California Labor Code committed by defendant Adecco USA, Inc. ("Defendant").  Plaintiff Rajan Nanavati ("Plaintiff") brings claims on behalf of himself and a putative class of others similarly situated, seeking recompense and penalties in connection with those alleged violations.  Plaintiff also seeks to bring a representative action under California's Labor Code Private Attorneys General Act of 2004 ("PAGA"), Cal. Lab. Code § 2698, *et seq.*, which permits statutory penalties for violations of the Labor Code.  Before the Court is Defendant's Motion to Compel Arbitration.  Def.'s Mot., ECF 13.  The Court heard oral argument on the motion on March 25, 2015.  For the reasons stated herein, Defendant's Motion to Compel Arbitration is GRANTED.

## I.   BACKGROUND

Defendant is a Delaware Corporation with its corporate headquarters in Jacksonville, Florida.  Compl. ¶ 17, ECF 1; Decl. of Virginia Watson ¶ 1, ECF 13-2.  Defendant is "one of the largest staffing companies in the United States," and recruits and employs temporary employees (the company calls them "associates") who are placed at Defendant's client sites.  Watson Decl. ¶ 1; *see also* Compl. ¶¶ 5, 17.  Plaintiff was one such employee and was employed by Defendant "to perform services for defendant's client Google" for about four months from January to May 2014.

United States District Court
Northern District of California

1  Compl. ¶ 11; Watson Decl. ¶ 2.  In a complaint originally filed in the Superior Court for the

2  County of Santa Clara, Plaintiff alleges that during that period of employment, Defendant violated

3  California labor laws by failing to compensate him for overtime and meal breaks, failing to keep

4  accurate records of the number of hours he worked, and failing to promptly pay all compensation

5  owed (including overtime and mealtime compensation) upon Plaintiff's termination from

6  employment.  Compl. ¶¶ 25-35.  Plaintiff brings claims regarding these violations on behalf of

7  himself and a class of similarly situated current and former employees who performed services for

8  Defendant's clients in California in the four years prior to the filing of the complaint.  *Id.* ¶ 22.  On

9  September 15, 2014, Defendant removed the action to federal court pursuant to the Class Action

10  Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453, 1711–15.  Notice of Removal, ECF

11  1.  This Court has jurisdiction under 28 U.S.C. § 1332(d).

12          On November 21, 2014, Defendant filed the instant motion to compel arbitration of

13  Plaintiff's claims pursuant to a Dispute Resolution and Arbitration Agreement for

14  Consultants/Associates ("Agreement") that Plaintiff signed as part of the "on-boarding" process to

15  begin employment with Defendant.  The Agreement provides that "the Company and Employee

16  agree that any and all disputes, claims or controversies arising out of or relating to this Agreement,

17  the employment relationship between the parties, or the termination of the employment

18  relationship, shall be resolved by binding arbitration . . . ."  Watson Decl. Exh. C (Agreement) at ¶

19  1. In bold and capitalized font, the first paragraph concludes: "By signing this agreement, the

20  parties hereby waive their right to have any dispute, claim or controversy decided by a judge or

21  jury in a court."  *Id.*  Most salient to the issues before the Court, paragraphs 7 and 8 of the

22  Agreement further provide (likewise in bold and capitalized font):

23              7.  By signing this agreement, the parties agree that each may bring
                claims against the other only in their individual capacity, and not as
24              a plaintiff or class member in any purported class and/or collective
                proceeding.
25
26              8. Furthermore, by signing this agreement, the parties agree that
                each may bring claims against the other only in their individual
27              capacity and not in any representative proceeding under any private
                attorney general statute ("PAGA claim"), unless applicable law
28              requires otherwise.  If the preceding sentence is determined to be
                unenforceable, then the PAGA claim shall be litigated in a civil

court of competent jurisdiction and all remaining claims will proceed in arbitration.

Agreement at ¶¶ 7-8.  Employees may opt out within 30 days of signing the arbitration agreement. *Id.* ¶ 9.  In order to do so, an employee must first request a form from the human resources department via an email address provided in paragraph 9 of the Agreement.  The same paragraph states clearly that "[a]n Employee who opts out as provided in this paragraph will not be subject to any adverse employment action as a consequence of that decision . . . ."  *Id.*  Failure to timely submit a completed opt out form constitutes acceptance of the Arbitration Agreement.  *Id.*

The undisputed facts, as set forth in the declaration of Virginia Watson, the Senior Vice President of Operations for Defendant, show that Plaintiff reviewed and electronically signed the Agreement on January 21, 2014 as part of Defendant's "on-boarding" process for new hires.[1] Watson Decl. ¶¶ 4-10, Exh. C.  Plaintiff furthermore acknowledged agreement to Defendant's Electronic Signature Agreement and acknowledged receipt and acceptance of the terms of the "on-boarding" forms.  *Id.* ¶¶ 7, 13, Exhs. B, D.  Based on her review of Plaintiff's records, as well as confirmation from Defendant's HR Department, Watson also attests that Defendant received no email from Plaintiff requesting the form that would allow him to opt out of the arbitration agreement, nor does Defendant have a signed opt out form from Plaintiff.  *Id.* ¶ 12.

On December 5, 2014, after Defendant sought to compel arbitration, Plaintiff filed a complaint with the National Labor Relations Board ("NLRB") alleging unfair labor practices including, *inter alia*, the promulgation of an allegedly unlawful arbitration agreement.  Pl.'s Opp. 3; Decl. of VJ Chetty ¶ 2, ECF 14-1; Pl.'s Request for Judicial Notice ("RJN") Exh. B, ECF 14-1.[2] At the March 26 hearing, Plaintiff indicated that the NLRB had investigated the allegations and communicated its intent to file a complaint against Defendant in the near future.  Plaintiff

---

[1] These facts are not in dispute because Plaintiff has submitted no declaration of his own refuting the facts.  In fact, Plaintiff relies on the Watson Declaration in his opposition to Defendant's motion.  *See* Pl.'s Opp. 4-5, ECF 14.

[2] Plaintiff's Request for Judicial Notice is GRANTED as to Exhibit B, as Plaintiff's filing with the NLRB is a public record of which the Court may properly take judicial notice. Fed. R. Evid. 201; *Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998).  The Court need not take judicial notice of Exhibit A, which is the operative pleading in this action.  The request for judicial notice is accordingly DENIED with respect to that document.

United States District Court
Northern District of California

1    requested orally that the Court stay this action pending resolution of the NLRB's complaint.

2    **II.    LEGAL STANDARD**

3           The Federal Arbitration Act ("FAA") governs the enforceability and scope of an arbitration

4    agreement.  9 U.S.C. §§ 1 *et seq.*  Under the FAA, a party seeking to invoke an arbitration

5    agreement may petition the district court "which, save for such agreement, would have jurisdiction

6    [to hear the case], for an order directing that such arbitration proceed in the manner provided for in

7    such agreement."  9 U.S.C. § 4; *see also Trompeter v. Ally Financial, Inc.*, 914 F. Supp. 2d 1067,

8    1071 (N.D. Cal. 2012).

9           A district court faced with a petition to enforce an arbitration clause engages in a limited

10   two-part inquiry: first, it determines whether the arbitration agreement is valid, and second, it

11   determines whether the agreement encompasses the claims at issue.  *See, e.g.*, *Mitsubishi Motors*

12   *Co. v. Soler Chrysler–Plymouth*, 473 U.S. 614, 627-28 (1985); *see also Trompeter*, 914 F. Supp.

13   2d at 1071.  The FAA dictates that arbitration agreements are "a matter of contract," and "shall be

14   valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

15   revocation of any contract."  9. U.S.C. § 2.  Such generally applicable contract defenses include

16   "fraud, duress, or unconscionability, but not [ ] defenses that apply only to arbitration or that

17   derive their meaning from the fact that an agreement to arbitrate is at issue."  *AT & T Mobility*

18   *LLC v. Concepcion*, 131 S.Ct. 1740, 1746 (2011).  Consistent with the text of the FAA, "courts

19   must 'rigorously enforce' arbitration agreements according to their terms."  *Am. Exp. Co. v. Italian*

20   *Colors Rest.*, 133 S. Ct. 2304, 2309 (2013) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S.

21   213, 221 (1985)).

22   **III.   DISCUSSION**

23          Defendant submits that this entire action must be sent to arbitration because the Agreement

24   is valid and enforceable and, by its terms, applies to all of Plaintiff's claims.  Def.'s Mot. 2-7.

25   Because the Agreement contains class and representative action waivers, Defendant moreover

26   contends that Plaintiff must arbitrate his claims in an individual capacity.  *Id.* 7-10.  Plaintiff

27   challenges the enforceability of the two waiver provisions.  *See* Pl.'s Opp. 3-12, ECF 14.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

### A.    The Arbitration Agreement is Valid

As an initial matter, the Court finds that Defendant has sufficiently demonstrated the existence of a valid agreement between the parties to arbitrate claims relating to Plaintiff's employment with Defendant.  At oral argument, Plaintiff attempted to argue that *Ruiz v. Moss Brothers Auto Group*, 232 Cal. App. 4th 836 (2014), a recent state court of appeal ruling that Plaintiff brought to the Court's attention in January 2015, demonstrates that Defendant has not met its burden of proving the existence of an enforceable arbitration agreement.  The *Ruiz* court affirmed the trial court's factual determination that the employer failed to submit sufficient evidence that the plaintiff employee was the person who electronically signed the arbitration agreement at issue where the employee testified that he did not recall signing the agreement and would not have signed such an agreement if it had been presented to him.  *Id.* at 840.

Reliance on *Ruiz* is unavailing because, as Defendant properly notes, nowhere in his opposition to the motion to compel arbitration did Plaintiff challenge the authenticity of his signature or the prima facie validity of the arbitration agreement.  Def.'s Reply 1, ECF 15.  As such, Plaintiff has already conceded that he is bound by a valid agreement.  Moreover, Plaintiff offers no evidence to suggest that he did not sign the Agreement, nor does he challenge the facts set forth in the declaration of Virginia Watson, Defendant's Senior Vice President of Operations, which establish in detail her basis for concluding that Plaintiff did electronically sign the Agreement.  *See* Watson Decl. ¶¶ 3-13.  In the absence of evidence raising any doubts as to the provenance of the electronic signature on the Agreement, the detailed Watson declaration easily satisfies Defendant's low burden to authenticate Plaintiff's electronic signature and establish the existence of a valid arbitration agreement.  *Compare Ruiz*, 232 Cal. App. 4th at 844-45 ("unsupported assertion" that the plaintiff was the one who electronically signed agreement insufficient to authenticate the signature "in the face of [the plaintiff's] failure to recall electronically signing" the agreement).[3]

---

[3] The *Ruiz* court distinguished its case from a prior case, *Condee v. Longwood Management Corp.*, 88 Cal. App. 4th 215, 218 (2001), which held that the employer is not required to authenticate the employee's signature *as a preliminary matter*.  The *Ruiz* court found that the employer bears the burden of proof to authenticate a signature once the employee contests the validity of the

United States District Court
Northern District of California

The Court therefore concludes that there exists a valid agreement to arbitrate between the parties.  Further, all of Plaintiff's claims fall within the scope of the Agreement, as they arise out of "the employment relationship between the parties" and "the termination of the employment relationship."  Agreement ¶ 1.  The only question remaining is the enforceability of the waiver provisions requiring Plaintiff to arbitrate his claims in an individual capacity.

### B.   The Class Action Waiver is Valid and Enforceable

Plaintiff contends that paragraph 7 of the Agreement, which prohibits him from proceeding as "a plaintiff or class member in any purported class and/or collective proceeding" is unenforceable under federal law.  The filing of a class action lawsuit to enforce state labor laws, Plaintiff argues, is "concerted activity" protected by section 7 of the National Labor Relations Act ("NLRA").  Pl.'s Opp. 3-4; *see* 29 U.S.C. § 157.  Because the NLRA deems it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in" section 7, 29 U.S.C. § 158(a)(1), Plaintiff contends that the class action waiver in the Agreement is an unlawful restraint on collective action and therefore unenforceable under the NLRA.  *See* Pl.'s Opp. 8-9.

Plaintiff relies on two decisions by the NLRB to advance his argument: *In re D. R. Horton, Inc.*, 357 N.L.R.B. No. 184 (Jan. 3, 2012) ("*Horton I*") and *Murphy Oil USA, Inc.*, 361 N.L.R.B. No. 72 (Oct. 28, 2014).  In *Horton I*, the NLRB found that mandatory arbitration agreements that bar employees from bringing joint, collective, or class action claims restrict substantive rights under section 7 of the NLRA and are therefore unlawful.  *Horton I,* 357 N.L.R.B. No. 184, at *5-8.  The NLRB furthermore concluded that the rule against waiver of class actions in employment agreements did not conflict with the objectives of the FAA.  *Id.* at *11-16.  The majority of federal courts to have considered *Horton I* have rejected its reasoning.  Specifically, the Fifth Circuit partially overruled *Horton I*, finding that the NLRB had misapplied the FAA and that the Board's rule against waiving class actions does not fall within the "savings clause" of § 2 of the FAA.

arbitration agreement.  *Ruiz*, 232 Cal. App. 4th at 845-46.  Plaintiff did not contest the validity of the Agreement and, as such, Defendant was not required to authenticate his signature as a preliminary matter.  In any event, however, Defendant has satisfactorily authenticated Plaintiff's signature even under *Ruiz*.

*D.R. Horton, Inc. v. N.L.R.B.*, 737 F.3d 344, 359 (5th Cir. 2013) ("*Horton II*"); [4] 9 U.S.C. § 2 (arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract").  Furthermore, the Fifth Circuit determined that there is no congressional command in the NLRA that overrides the FAA and its liberal policy of promoting individual arbitration.  *Horton II*, 737 F.3d at 360-62.  Noting that agreeing with the NLRB would create a circuit split, the Fifth Circuit sided with the weight of federal courts holding class action waivers enforceable.  *Id.* at 362; *see Richards v. Ernst & Young, LLP,* 744 F.3d 1072, 1075 n.3 (9th Cir. 2013) (observing number of federal courts that have rejected *Horton I*); *see also Brown v. Citicorp Credit Servs., Inc.*, No. 1:12-CV-00062-BLW, 2015 WL 1401604 (D. Idaho Mar. 25, 2015) (granting reconsideration of prior determination that class waiver in arbitration agreement violates NLRA and granting motion to enforce arbitration agreement containing class action waiver).  Indeed, even the California Supreme Court rejected *Horton I* when faced with a class waiver provision in an arbitration agreement that was entered free of coercion.  *Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348, 367-74 (2014).  Despite this skepticism from numerous courts, the NLRB reaffirmed *Horton I* in *Murphy Oil*, concluding that an employer violates the NLRA when it requires, as a condition of employment, an arbitration agreement that waives an employee's access to class action procedures.[5]  *Murphy Oil*, 361 N.L.R.B. No. 72, at *2-3, 11, 24-26.

Although the Ninth Circuit has never taken a concrete stance on *Horton I*, in *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072 (9th Cir. 2014), a unanimous panel of the Ninth Circuit rejected arguments against enforcing a class action waiver in an employment agreement similar to the ones Plaintiff advances here.  Without deciding whether the filing of a class action to enforce labor laws is "concerted activity" within the meaning of the NLRA, the

---

[4] The Fifth Circuit also noted that "[t]he use of class action procedures . . . is not a substantive right" and observed that there are "numerous decisions holding that there is no right to use class procedures under various employment-related statutory frameworks."  *Horton II*, 737 F.3d at 357.

[5] Since *Murphy Oil*, one district court has confronted and declined to apply that decision, instead following binding circuit precedent rejecting *Horton I* to enforce a class action waiver.  *Patterson v. Raymours Furniture Co.*, No. 14-CV-5882 VEC, 2015 WL 1433219, at *7 (S.D.N.Y. Mar. 27, 2015).

United States District Court
Northern District of California

1  court determined that the plaintiff failed to show that the arbitration agreement she signed with

2  Bloomingdale's "interfered with, restrained, or coerced her in the exercise of her right to file a

3  class action." *Id.* at 1075.  Distinguishing *Horton I* on the ground that it concerned a *mandatory*

4  agreement to arbitrate, the *Johmohammadi* court found dispositive the fact that Bloomingdale's

5  "did not *require* [the plaintiff] to accept a class-action waiver *as a condition of employment*." *Id.*

6  (emphasis added).  Had the plaintiff wanted to retain her right to file a class action, "nothing

7  stopped her from opting out of the arbitration agreement." *Id.* at 1075-76.  "In the absence of any

8  coercion influencing the decision," the Ninth Circuit found no unlawful restraint or interference in

9  merely presenting an employee with a choice to arbitrate on an individual basis or resolve future

10  employment disputes in court. *Id.* at 1076.

11       Plaintiff attempts to distinguish *Johnmohammadi* on two grounds: first, that it predated the

12  NLRB's subsequent reaffirmation of *Horton I* in *Murphy Oil*, and second that unlike in

13  *Johnmohammadi*, Defendant here did exercise coercion to unlawfully influence Plaintiff's

14  decision to accede to the arbitration agreement.  Pl.'s Opp. 4-7.  Neither argument is persuasive.

15  *Murphy Oil*, like *Horton I*, concerned a mandatory arbitration agreement with no opportunity to

16  opt out.  Therefore, to the extent *Murphy Oil* remains viable given the round judicial rejection of

17  *Horton I*, it is inapplicable to the Ninth Circuit's reasoning in *Johnmohammadi*, which focused on

18  a lack of coercion in the employee's agreement (through failure to opt out) to arbitrate.  Indeed, as

19  Defendant notes, the arbitration agreement and class action waiver in *Johnmohammadi* were

20  upheld by an administrative law judge in collateral NLRB proceedings for precisely that reason.

21  Def.'s Reply 3 (citing *Bloomingdale's, Inc. & Fatemeh Johnmohammadi*, 31-CA-071281, 2013

22  WL 3225945 (June 25, 2013)).

23       Nor is this case factually distinguishable from *Johnmohammadi*.  Despite Plaintiff's

24  attempts to characterize Defendant's "on-boarding" process as coercive, *see* Pl.'s Opp. 4-5, it is no

25  different from the process described in *Johnmohammadi*.  When Defendant hired Plaintiff, he

26  received a set of documents including an arbitration agreement that clearly and simply described

27  Defendant's alternative dispute resolution program and the contours of the parties' agreement to

28  arbitrate.  The arbitration agreement permitted Plaintiff to opt out within 30 days without any

1    negative consequence.  Agreement ¶ 9.  By not opting out, Plaintiff became bound by the terms of

2    the arbitration agreement.  *Johnmohammadi*, 755 F.3d at 1074 (citing *Circuit City Stores, Inc. v.*

3    *Ahmed*, 283 F.3d 1198, 1199-1200 (9th Cir. 2002)).  To be sure, Plaintiff was not given the opt out

4    form when he signed the Agreement.  However, merely being required to request the form by

5    email did not force Plaintiff to make the decision to opt out "while sitting in front of the computer

6    and going through the entire packet of orientation materials," Pl.'s Opp. 5, since nothing precluded

7    him from copying the email address and requesting a form later.  Nor does this Court find

8    persuasive Plaintiff's assertion that the need to request an opt out form from the human resources

9    department operated as a deterrent to opting out.  *Id.*  Plaintiff certainly did not testify that he felt

10   deterred by this process.[6]  Further, because the opt out provision specifically assures that opting

11   out would not carry any adverse employment consequences, it would be unreasonable to simply

12   presume that Plaintiff was coerced into not opting out.  The more reasonable conclusion is that

13   Plaintiff made a "fully informed and voluntary decision" to accede to the Agreement.

14   *Johnmohammadi*, 755 F.3d at 1074.

15        In sum, *Johnmohammadi* squarely controls the outcome in this case.  Here, as in

16   *Johnmohammadi*, Plaintiff signed an arbitration agreement and was afforded ample opportunity to

17   opt out of the arbitration agreement.  He chose not to do so.  Therefore, the class action waiver is

18   not an unlawful restraint of Plaintiff's right to engage in concerted activity and is enforceable

19   according to the terms of the Agreement.[7]

20        **C.    The PAGA Waiver is Enforceable**

21        In addition to the class waiver provision of the Agreement, Plaintiff challenges the

22   enforceability of paragraph 8, which further requires the parties to arbitrate their claims in an

23   individual capacity and "not in any representative proceeding under any private attorney general

24   statute."  Agreement ¶ 8; Pl.'s Opp. 11-12.  The Court finds that the FAA requires enforcement of

25

26   [6] Plaintiff is in fact completely silent concerning all of this.  He relies solely on the declaration of
     Virginia Watson submitted by Defendant to make his case that his agreement to arbitrate on an
27   individual basis was in some way coerced.

28   [7] Because *Johnmohammadi* so clearly controls, the Court DENIES Plaintiff's request to stay this
     action pending resolution of the NLRB's civil action.

United States District Court
Northern District of California

1    this waiver of representative claims.

2          The enforceability of a waiver of representative claims under California's PAGA statute,

3    Cal. Lab. Code § 2698, *et seq.*, is an unsettled area of the law.  There is persuasive authority on

4    both sides and no binding determination by the Court of Appeals for the Ninth Circuit or the

5    United States Supreme Court as of yet.  Most notably, the California Supreme Court in *Iskanian v.*

6    *CLS Transportation Los Angeles, LLC*, 59 Cal. 4th 348 (2014), recently ruled that employment

7    agreements that "requir[e] employees to waive the right to bring a PAGA action before any

8    dispute arises" are "contrary to public policy" and therefore unenforceable.  *Id.* at 383.  The

9    PAGA statute was enacted to deputize individuals to enforce state labor laws on behalf of the

10   state.  *See id.* at 388 (characterizing the PAGA statute as the state "supplement[ing]" its

11   enforcement capability "by authorizing willing employees to seek civil penalties for Labor Code

12   violations traditionally prosecuted by the state").  Therefore, the Court reasoned, a "PAGA action

13   is a dispute between an employer and the state Labor and Workforce Development Agency." *Id.*

14   at 384.  By contrast, the *Iskanian* court observed that the FAA is a statute that focuses on *private*

15   disputes, noting that the United States Supreme Court's FAA jurisprudence, with one exception,

16   "consists entirely of disputes involving the parties' *own* rights and obligations, not the rights of a

17   public enforcement agency."  *Id.* at 385 (emphasis in original); *see generally id.* at 384-87.  As

18   such, "a PAGA claim lies outside the FAA's coverage because it is not a dispute between an

19   employer and an employee arising out of their contractual relationship." *Id.* at 386.  Because a

20   state enforcement agency's interests are interposed between parties in a PAGA representative

21   action, the *Iskanian* court concluded that the FAA simply does not apply and does not operate to

22   preempt the state's rule against *ex ante* waivers of PAGA representative claims.  *Id.* at 387-89.

23   The United States Supreme Court denied *certiorari* on January 20, 2015.  135 S.Ct. 1155 (2015).

24         Few federal district courts have followed *Iskanian*.  As interpretation of the FAA and

25   preemption are issues of federal law, the majority of district courts to have confronted the issue

26   acknowledge *Iskanian* as persuasive authority but conclude that the rule against PAGA waivers

27   frustrates the goals of the FAA and is therefore preempted.  *Estrada v. CleanNet USA, Inc.*, No. C

28   14-01785 JSW, 2015 WL 833701, at *4-5 (N.D. Cal. Feb. 24, 2015) (collecting pre-*Iskanian* cases

United States District Court
Northern District of California

10

that found PAGA waivers enforceable and holding the *Iskanian* rule preempted to the extent it frustrates the FAA's goals); *see also Mill v. Kmart Corp.*, No. 14-CV-02749-KAW, 2014 WL 6706017, at *6-7 (N.D. Cal. Nov. 26, 2014) (declining to follow *Iskanian*); *Lucero v. Sears Holdings Mgmt. Corp.*, No. 14-CV-1620 AJB WVG, 2014 WL 6984220, at *3-6 (S.D. Cal. Dec. 2, 2014) (same); *Langston v. 20/20 Companies, Inc.*, No. EDCV 14-1360 JGB SPX, 2014 WL 5335734, at *6-8 (C.D. Cal. Oct. 17, 2014) (same); *Chico v. Hilton Worldwide, Inc.*, No. CV 14-5750-JFW SSX, 2014 WL 5088240, at *12-13 (C.D. Cal. Oct. 7, 2014) (same); *Ortiz v. Hobby Lobby Stores, Inc.*, ---F. Supp. 3d---, No. 2:13-CV-01619, 2014 WL 4961126, at *9-11 (E.D. Cal. Oct. 1, 2014) (same); *Fardig v. Hobby Lobby Stores Inc.*, No. SACV 14-00561 JVS, 2014 WL 4782618, at *3-4 (C.D. Cal. Aug. 11, 2014) (same).

More recently, two courts have broken with the pack and found *Iskanian* persuasive.  In *Hernandez v. DMSI Staffing, LLC.*, No. C-14-1531 EMC, 2015 WL 458083 (N.D. Cal. Feb. 3, 2015), the court conducted a thorough analysis of *Iskanian* and found persuasive the fact that there is a "critical difference between PAGA claims on behalf of the government" and private suits.  *Id.* at *7-8.  Moreover, because PAGA representative actions are not class actions requiring numerosity, commonality, or typicality, the court found the reasoning of *Concepcion* inapplicable to PAGA claims.  *Id.* at *6.  Finally, the *Hernandez* court also noted the federalism concerns attendant in enforcing PAGA waivers to the detriment of California's police powers of enforcement.  *Id.* at *8-9.  Shortly thereafter, the court in *Zenelaj v. Handybook Inc.*, No. 14-CV-05449-TEH, 2015 WL 971320 (N.D. Cal. Mar. 3, 2015), followed *Iskanian* and *Hernandez* and declined to enforce a waiver of representative actions in an arbitration agreement.  *Id.* at *7-8.

Although the *Hernandez* and *Zenelaj* orders are thorough and well-reasoned, the Court finds that it must respectfully follow the weight of federal courts rejecting *Iskanian*.  "The central premise of the Supremacy Clause is that federal law is superior to state law."  *Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928, 936 (9th Cir. 2013).  "The Supreme Court has therefore long recognized that any state law that 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress' is preempted."  *Id.* (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).  "The 'principal purpose' of the FAA is to 'ensur[e] that private

arbitration agreements are enforced according to their terms.'" *Concepcion*, 131 S. Ct. at 1748

(quoting *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468,

478 (1989)).  It is furthermore "beyond dispute," that the FAA "was designed to *promote*

arbitration." *Concepcion*, 131 S. Ct. at 1749 (emphasis added); *see also KPMG LLP v. Cocchi*,

132 S. Ct. 23, 25 (2011) (per curiam) (the FAA "reflects an 'emphatic federal policy in favor of

arbitral dispute resolution'" (quoting *Mitsubishi*, 473 U.S. at 631)).  It is this Court's

determination that a rule against pre-dispute waivers of representative claims under PAGA stands

as an obstacle to that liberal policy.

Just like the California rule against class action waivers at issue in *Concepcion*, the

*Iskanian* rule against *ex ante* waivers of PAGA representative claims does not, on its face, disfavor

arbitration.  *See Concepcion*, 131 S. Ct. at 1747, 1750.  The FAA, however, also displaces

doctrines "normally thought to be generally applicable" that "have been applied in a fashion that

disfavors arbitration," particularly "since the judicial hostility towards arbitration that prompted

the FAA had manifested itself in a great variety of devices and formulas declaring arbitration

against public policy." *Id.* at 1747 (internal quotations omitted).  In this case, the Court is

persuaded that a rule that private employees cannot waive the ability to bring a PAGA

representative claim *before* a dispute arises necessarily disfavors arbitration agreements because

such agreements are generally made before a dispute arises.  Moreover, as the Supreme Court

explained in *Concepcion*, private parties enter into bilateral arbitration agreements in order to take

advantage of "the informality of arbitral proceedings," "reducing the cost and increasing the speed

of dispute resolution." *Id.* at 1749.  The contracting parties may exercise discretion "in designing

arbitration processes [] to allow for efficient, streamlined procedures tailored to the type of

dispute." *Id.*  Knowing that bringing class or representative claims into the arbitral forum

sacrifices those advantages of bilateral arbitration, *id.* at 1751-52, employers and employees may

agree ahead of time that they prefer speedy and cost-efficient dispute resolution and reasonably

consent—as the parties did here—to resolve disputes arising out of the employment relationship

only in an individual capacity so as to take full advantage of the arbitral forum.  Thus, like the

situation in *Concepcion*, a rule that an employee cannot waive invocation of the PAGA statute

United States District Court
Northern District of California

United States District Court
Northern District of California

1    before a dispute arises upsets that design and disproportionately impacts arbitration agreements.

2    *Id.* at 1747.

3        The Court notes that the PAGA waiver at issue in this case also contains a fail-safe

4    provision, which provides that if the waiver is determined to be unenforceable, "the PAGA claim

5    shall be litigated in a civil court of competent jurisdiction and all remaining claims will proceed in

6    arbitration."  Agreement ¶ 8.  As an initial matter, the Court rejects Plaintiff's argument that this

7    expressed preference for a judicial forum *if* an employee is permitted to bring a representative

8    PAGA claim should be used to defeat the waiver of such a representative claim.  Pl.'s Opp. 11-12.

9    Rather, the parties here clearly consented to and preferred individual arbitration but sought to

10    protect themselves from potentially having to resolve an expansive representative action in

11    informal arbitration in recognition that the state of the law regarding waivers of representative

12    claims was unsettled.[8]  More fundamentally, this fail-safe provision precisely demonstrates the

13    manner in which the *Iskanian* rule stands as an obstacle to the accomplishment of the FAA's

14    "overarching purpose," which is "to ensure the enforcement of arbitration agreements according to

15    their terms so as to facilitate streamlined proceedings."  *Concepcion*, 131 S. Ct. at 1748.  Applying

16    the *Iskanian* rule in this case results in a number of outcomes inconsistent with the objectives of

17    the FAA: the Agreement will not be enforced according to its terms with respect to the waiver of

18    PAGA representative claims; the representative claim will be removed entirely from arbitration;

19    *and* the parties will be committed to a lengthy litigation in a judicial forum concerning that

20    representative claim.[9]  When California law and federal law are thus incompatible, the state rule

21

22    [8] Defense counsel represented at oral argument that the "aggrieved employees" that Plaintiff seeks

23    to represent likely number in the tens of thousands and, given the nature of Defendant's business, could encompass temporary workers in a vast array of professions, ranging from bakers to computer programmers.

24    [9] The Court pauses here to observe that while the PAGA statute does not *require* numerosity,

25    commonality, typicality, adequacy of representation, or similar protections found in Federal Rule of Civil Procedure 23, *Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1122 (9th Cir. 2014),

26    the California Supreme Court has held that PAGA "is simply a procedural statute allowing an aggrieved employee to recover civil penalties—for Labor Code violations—that otherwise would

27    be sought by state labor law enforcement agencies," *Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court*, 46 Cal. 4th 993, 1003 (2009).  There are no federal rules of civil

28    procedure that govern the litigation of a representative action.  As such, a federal court is not foreclosed from applying the requirements of Rule 23.  *Baumann*, 747 F.3d at 1124.  Indeed, some

1    must give way to the FAA.

2        Finally, the California Supreme Court has recognized that PAGA "is simply a procedural

3    statute allowing an aggrieved employee to recover civil penalties—for Labor Code violations—

4    that otherwise would be sought by state labor law enforcement agencies"). *Amalgamated Transit*

5    *Union, Local 1756, AFL-CIO v. Superior Court*, 46 Cal. 4th 993, 1003 (2009).  Although, as a suit

6    ostensibly on behalf of a state enforcement agency, a PAGA representative claim may bear some

7    resemblance to a federal *qui tam* action, there are also critical differences.  *Cf. Iskanian*, 59 Cal.

8    4th at 382.  In contrast to *qui tam* actions under the False Claims Act ("FCA"), the state

9    enforcement agency retains no control over the prosecution of a PAGA representative action once

10   the agency has decided not to investigate an alleged violation.  *See* Cal. Lab. Code § 2699.3; *U.S.*

11   *ex rel. Eisenstein v. City of New York, New York*, 556 U.S. 928, 932 (2009) (after choosing not to

12   intervene in a relator's case, the United States retains a number of rights, including the right to

13   review discovery and to veto a relator's decision to voluntarily dismiss the action).  In similar

14   fashion, a representative PAGA suit is significantly different from the government enforcement

15   action in *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279 (2002), wherein the EEOC was "master of

16   its own case," with the statutory authority "to evaluate the strength of the public interest at stake"

17   and pursue a claim even without the employee's consent.  *Id.* at 290-96; *accord*, *Langston*, No.

18   EDCV 14-1360 JGB SPX, 2014 WL 5335734, at *7.  Because an aggrieved employee pursues the

19   PAGA action in his own name, exercises complete control over the lawsuit, and is not restrained

20   by any provision of the PAGA statute from settling or disposing of the claim as he sees fit, a

21   PAGA representative action—once the State has chosen not to intervene—is much more akin to a

22   private action between private parties in which the State has a beneficial interest.  As a dispute that

23   is, at its core, between private parties, the terms of their arbitration agreement control.

24       It bears repeating that the Agreement in this case does not contain the hallmarks of a

25   procedurally unconscionable contract of adhesion.  Although Plaintiff was required to sign the

26

27   of the procedural protections of Rule 23 must pertain to the extent a judgment in a PAGA claim is
     to have binding effect on non-party aggrieved employees.  *Cf. Arias v. Superior Court*, 46 Cal. 4th

28   969, 985-87 (2009).

United States District Court
Northern District of California

Agreement when he began employment and could not negotiate its terms, the Agreement itself is short and very clearly identifies the rights being waived.  Most importantly, Plaintiff could easily opt out of the Agreement within thirty days without any adverse employment consequences.  He did not do so.  Plaintiff therefore freely, and without coercion, waived his access to the procedural device of a representative action under the PAGA statute.[10]  The FAA requires that such a waiver be enforced according to its terms.

The Court therefore finds that the waiver of representative claims in paragraph 8 of the Agreement is enforceable, and Plaintiff may only pursue his claims in an individual capacity.  To the extent California law permits Plaintiff to maintain a PAGA claim in an individual capacity, that claim may be pursued in arbitration.

### D.    Stay

Once a court has determined that the claims in an action are "referable to arbitration under an agreement in writing for such arbitration," the Court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3.  Defendant has requested that the Court stay this action pending arbitration.  Def.'s Mot. 10.  Plaintiff's opposition brief is silent on the issue.  As such, the Court grants Defendant's request and stays this action pending the completion of arbitration as to all of Plaintiff's claims.

### IV.    ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's Motion to Compel Arbitration is GRANTED.  All of the claims that Plaintiff has asserted in this action are subject to arbitration according to the terms of the Dispute Resolution and Arbitration Agreement for Consultants/Associates.

Defendant's request to stay this action pending arbitration is GRANTED.  All deadlines and hearings previously set in this case are hereby VACATED.  The parties are ORDERED to file

---

[10] To the extent such waivers of representative claims "frustrate[] the PAGA's objectives," *Iskanian*, 59 Cal. 4th at 384, that species of argument under the "effective vindication"/"inherent conflict" exception to preemption does not apply to state laws, *Ferguson*, 733 F.3d at 936.

1  by October 15, 2015 a two-page letter updating the Court as to the status of arbitration.

2  **IT IS SO ORDERED.**

3  Dated: April 13, 2015

4

5  BETH LABSON FREEMAN
   United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California